FILED
JUL 19 2010

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

******************************************************************

| | | |
|---|---|---|
| WURTH ELECTORNICS MIDCOM, INC., a South Dakota Corporation, | * * * * | CIV. 10-1002 |
| Plaintiff, | * * * | ORDER AND OPINION |
| -vs- DIGITAL LIGHT, LLC; DIGITAL LIGHT, LTD; LEMNIS, INC.; LEMNIS LIGHTING, B.V.; AND STEVEN NIA, | * * * * * * * | |
| Defendants. | * | |

******************************************************************

This matter is before the court on motion of the defendants Lemnis Lighting, B.V. and Lemnis, Inc. (collectively, "Lemnis") to transfer venue, pursuant to 28 U.S.C. § 1404(a). (Doc. #34.) This motion has been fully briefed and is ripe for adjudication.

I. **BACKGROUND**

A. **Factual Background**

Wurth Electronics Midcom, Inc. (hereinafter, "plaintiff") is a South Dakota corporation with its principle place of business in Watertown, SD. (Complaint, Doc. #1-3, ¶ 1; Pl.'s Resp. Mot. to Dismiss, Doc. #30, p. 10 n.4.) Plaintiff brings this suit based upon an alleged breach of contract resulting from the inability or refusal of Digital Light, LLC, Digital Light LTD., and Steven Nia (collectively, "Digital Light") to pay for components designed and manufactured by plaintiff. (Complaint, Doc. #1-3, at ¶ 35; Memo to Support Motion to Dismiss, Doc. #21, p. 3.) Plaintiff designed these components–transformers and conductors (hereinafter, "Pharox components")–for the creation of the Pharox LED bulb. (Complaint, Doc. #1-3, at ¶¶ 9–11.) Plaintiff implicates Lemnis in this matter by contending Lemnis and Digital Light were partners in producing the Pharox bulb (Id. at ¶¶ 7–9.), and that as general partners, they are jointly and severally liable for the breach of contract alleged (Id. at ¶¶ 27–31), or in the alternative, are liable

1

under agency theories of implied authority, apparent authority or estoppel. (Id. at ¶¶ 32–37.) As proof of this relationship, plaintiff contends that the single payment it received from Digital Light was the result of money transferred by Lemnis from its own accounts to Digital Light for the purpose of paying plaintiff. (Id. at ¶ 20.) Plaintiff also asserts that a press release indicates the existence of a partnership between Digital Light and Lemnis. Additionally, plaintiff contends that Lemnis requested that plaintiff make delivery of finished products to Digital Light (Id. at ¶ 13), and that Lemnis intervened to encourage plaintiff to continue shipping product to Digital Light, instead of another supplier, after Digital Light's prolonged delays in payment to plaintiff. (Id. at ¶¶ 20–21.) As a result of these representations, plaintiff contends that it continued to send Pharox components in the face of nonpayment by Digital Light. (Id. at ¶ 22.) Plaintiff asserts Lemnis is liable for unjust enrichment as a result of being in a partnership or other business agreement with Digital Light, who allegedly received Pharox components without paying for them. (Id. at ¶¶ 38–41.) Finally, plaintiff contends that Lemnis is liable for negligent misrepresentation, citing the aforementioned press release and other unspecified communications from Lemnis to plaintiff as proof that Lemnis was trying depict Digital Light as "an established and trustworthy company" merely to insulate itself from liability, as it had an undefined reason to know that Digital Light was not trustworthy. (Id. at ¶¶ 47–49.)

Lemnis agrees that it requested plaintiff to make delivery to Digital Light. (Lemnis Lighting, B.V. Answer, Doc. #14, ¶ 13.) Copies of e-mails provided by Lemnis also lend veracity to plaintiff's claim that Lemnis transferred money to Digital Light to pay the plaintiff at risk of stopping Pharox component production (Mollema Aff., Doc. #39, Ex. 2.), and that Lemnis dissuaded plaintiff from shipping Pharox components to another supplier. (Id., Ex. 1.) Nevertheless, Lemnis denies these two claims outright or based on lack of sufficient knowledge. (Lemnis Lighting, B.V. Answer, Doc. #14, ¶¶ 20–21.) Although acknowledging that a press release exists that refers to their "partnership" with Digital Light (Lemnis Lighting, B.V. Answer, Doc. #14, ¶ 8), Lemnis counters with a copy of its Exclusive Distribution Agreement with Digital Light, depicting their relationship as one between a principal and contractor. (Philips Aff., Doc. #40, Ex. 1.) Curiously, although Lemnis Lighting, B.V. and Lemnis Inc. share the same counsel, they decided to file separate answers. (Lemnis Lighting, B.V. Answer, Doc. #14; Lemnis, Inc.

Answer, Doc. #15.) Little substantively differentiates the two answers. Both Lemnis Lighting, B.V. and Lemnis, Inc. deny each of the counts against one another.

### B. Procedural History

On December 2, 2009, this action was commenced in the Third Judicial Circuit of the State of South Dakota in the County of Codington. Plaintiff alleged two counts of breach of contract against both Lemnis and Digital Light (Complaint, Doc. 1-3, ¶¶ 27–37) and a count of fraud and deceit against Steven Nia (Id. at ¶¶ 42–46). Lemnis filed its motion to remove this proceeding to federal court, pursuant to 28 U.S.C. § 1441(b), on January 11, 2010. Lemnis filed this motion to transfer venue (Doc. #34) on March 5, 2010, along with three affidavits in support of the motion. (Docs. #38–40.) Plaintiff filed its memorandum in response (Doc. #42) and two affidavits in support (Doc. #43–44) on March 17, 2010. Lemnis replied in kind with its memorandum filed March 31, 2010. (Doc. #53.)

### C. Legal Standard

Lemnis requests a change of venue be granted pursuant to 28 U.S.C. § 1404(a). Section 1404(a) allows for a district court to transfer any civil action "to any other district or division where it might have been brought." In accordance with the letter of § 1404(a), the Eighth Circuit looks to three factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Terra Int'l, Inc. v. Miss. Chem. Corp. (*Terra II*), 119 F.3d 688, 691 (8th Cir. 1997). Additionally, a district court must engage in an analysis of all other factors relevant to venue, incorporating an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988). These defendants seeking transfer bear a heavy burden of showing that "the balance [of factors] is strongly in favor of the defendant[s]." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

## II. ANALYSIS

### A. Presumption Favoring Plaintiff's Choice of Venue

Before analyzing these factors, it is important to note the Eighth Circuit's deference to a plaintiff's choice of forum, and its qualifications. "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section

1404(a) typically bears the burden of proving transfer is warranted." Terra II, 119 F.3d at 695. Nonetheless, dismissal should not be automatically barred when the plaintiff has filed suit in his home forum, Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 n.23 (1981), although the court should grant great deference to the plaintiff in such circumstances. Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947). The presumption favoring the plaintiff applies "with less force when the plaintiff or real parties in interest are foreign," Piper Aircraft, 454 U.S. at 255 (1981), as the presumption rests upon the assumption that the plaintiff's choice of venue is convenient (see id. at 255–56,) and that the plaintiff did not choose the forum merely to take advantage of favorable law or to harass the defendants. De Melo v. Lederle Labs., 801 F.2d 1058, 1062 n.4 (8th Cir. 1986). Once plaintiff establishes that it brought its case in its home forum, however, its real showing of convenience will normally outweigh inconveniences articulated by the defendants. Id.; Bacon v. Liberty Mut. Ins. Co., 575 F.3d 781, 784 (8th Cir. 2009) (citations omitted). In summary, as long as the plaintiff provides a prima facie showing of convenience with the venue it chooses, and the plaintiff is not a foreign entity, the court should deny the motion to transfer unless the three factors articulated in Terra II substantially outweigh the presumption favoring the plaintiff.

To combat this presumption, Lemnis argues that the "real party in interest" informing all of plaintiff's interests is plaintiff's parent company, the foreign-based Wurth Germany. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 5.) Historically, the Eighth Circuit grants less deference to a foreign plaintiff when the plaintiff has no relevant connection to the chosen venue. *See, e.g.*, In re Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010) (noting that plaintiff, defendant, potential witnesses and the dispute itself had no relevant connection to the venue). Plaintiff, on the other hand, is a standalone, subsidiary corporation that is incorporated (despite plaintiff's error in the caption describing itself as a Delaware corporation) and headquartered in South Dakota, designed the Pharox Components in South Dakota, and created correspondence regarding these transactions from South Dakota. (Pl.'s Resp. in Opp'n to Mot. to Transfer, Doc. #42, pp. 3, 8.) These are relevant connections to South Dakota–a fact that casts doubt upon Lemnis' characterization of plaintiff as a foreign corporation.

4

Nevertheless, a question resolves around whether Wurth Germany is the real party in interest and the plaintiff is simply its instrumentality, thereby making the plaintiff a foreign company by legal convention. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 5.) A thorough analysis of this issue, however, resolves in plaintiff's favor. By utilizing the Eighth Circuit's personal jurisdiction analysis for parent and subsidiary corporations, this Court can determine whether Wurth Germany, the foreign company, is the "real party in interest." Courts presume that even a parent and its wholly-owned subsidiary are distinct personalities. See Burnet v. Clark, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities."); cf. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003) (citation omitted) ("A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary."). Courts may ignore this presumption "where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of [the parent] corporation." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003). Lemnis' argument thereby hinges upon its ability to in effect pierce the corporate veil between plaintiff and Wurth Germany–an ability determined by state law. Cf. Id. (articulating this principle in determining whether the court had personal jurisdiction over the parent corporation).

Lemnis supports its contention by asserting only two points–that plaintiff's invoices sported Wurth Germany's logo and that plaintiff shared the same sales agent with Wurth Germany. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 6.) The former is an incorrect statement–plaintiff's logo is distinct from Wurth Germany's logo by virtue of the addition of "Midcom" to the design–and the latter justification is a singular factor insufficient to warrant breaking down the distinct personalities between plaintiff and Wurth Germany, whether this court uses the multi-factor bases for veil piercing found in California law (see Laird v. Capital Cities/ABC, Inc., 80 Cal. Rptr. 2d 454, 463 (Cal. Ct. App. 1998)), or in South Dakota law (see Glanzer v. St. Joseph Indian School, 438 N.W.2d 204, 207 (SD 1989)). Because veil piercing is not warranted, plaintiff, as a subsidiary, is a distinct entity with no "real" foreign party in interest under the law. Plaintiff thereby retains the presumption in favor of its choice of venue.

### B. Multi-factor Analysis in Deciding a Motion to Transfer

As noted above, three factors typically inform this Court's decision on transfer of venue: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Courts may look to additional factors, but they must provide a case-by-case analysis of all factors in order to determine whether transfer is warranted. Because plaintiff retains the presumption in favor of its choice of venue, Lemnis bears the burden of showing that "the balance [of factors] is strongly in favor of the defendant." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (U.S. 1947).

*i. Balance of Convenience*

In justifying a transfer to the District of Central California, Lemnis notes that three of the five defendants have an office located in or have been domiciled in California. (Mot. to Transfer, Doc. #34, p. 4.) Plaintiff counters that neither Lemnis defendant is located in the Central District, as the only domestic Lemnis defendant, Lemnis, Inc., is located in San Francisco–a part of the Northern District of California. (Pl.'s Resp. in Opp'n to Mot. to Transfer, Doc. #42, p. 5.) Plaintiff correctly argues that the language of § 1404(a) requires the court look at convenience in regards to the district, not of the state. This point, while a careful reading of the law, does not negate the thrust of Lemnis' argument, considering the relative propinquity of Lemnis' existing operations to the Central District. Moreover, as Lemnis notes, plaintiff argued that Mr. Nia is an alter ego of Digital Light LTD and Digital Light LLC, thereby making a strong case that the Central District is the home forum for Digital Light. (Complaint, Doc. #1-3, ¶ 4.) These points help to establish that the Central California District will be a more convenient venue for the defendants than South Dakota.

Nonetheless, proof of convenience for the defendants is insufficient to justify transfer of venue, as it "[m]erely shift[s] the inconvenience from one side to the other." Terra II, 119 F.3d at 697–98. Lemnis must instead prove that Central California is a venue that is more convenient for all parties when compared with South Dakota.

With this in mind, Lemnis posits one argument that makes the Central District of California convenient for all parties: it asserts that the communications relevant to the transaction–those involving Lemnis encouraging plaintiff to continue to send components to

Digital Light– were all sent to Mr. Giba in California. (Mot. to Transfer, Doc. #34, p. 5.) Presumably, this means that the records surrounding this "key" conversation are located in California, thereby making the Central District a better venue for both parties. Indeed, accessibility to records and documents is one of the additional factors that courts look to in order to assess the convenience of a venue. Terra II, 119 F.3d at 696. Nevertheless, in this "age of electronic document transmissions" this convenience factor is somewhat mitigated, although it still carries weight since the need may arise to refer to original documents or evidence in this litigation. Apple, 602 F.3d at 914. Ultimately, Lemnis only slightly improves the "standing" of the Central District as a more convenient venue for the parties than South Dakota, because it is unable to show the necessity of obtaining original documents located in the Central District.

Plaintiff asserts that it is incorporated and located in South Dakota. (Pl.'s Resp. in Opp'n to Mot. to Transfer, Doc. #42, p. 3.) Plaintiff also contends that the Pharox components were "requested to be and were designed in South Dakota," that the purchase orders were issued to South Dakota, that invoices were issued from South Dakota, that some payments were made electronically to the plaintiff located in South Dakota, and that the alleged injuries sustained by plaintiff as a result of the defendants' alleged failure to pay were sustained in South Dakota. (Pl.'s Resp. in Opp'n to Mot. to Transfer, Doc. #42, p. 6.) Presumably, plaintiff makes these arguments in order to prove that South Dakota is the more convenient forum for all parties because South Dakota is the location of much of the original documentation and evidence pertinent to these assertions. In the end, because both parties will likely assert some mixture of electronic document transmissions and original evidence, the issue of convenience of parties is "flat" between South Dakota and Central California. This is particularly so considering that while the parties have stipulated that documents and evidence exist within their ideal venue that are pertinent to their position, neither party alleges the necessity of obtaining the original copies of their documentation as evidence.

*ii. Witness Convenience*

Witness convenience is likely the most important factor in determining venue. Dakota Truck Underwriters v. Annett Holdings, Inc., 2006 WL 3391107, at *2 (DSD, 2006) (citing A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction

§ 3851 at 264 (1976)). "The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Id. (citing Wright, Miller & Cooper, *supra*, § 3851 at 270). Plaintiff provides a list of nine witnesses, seven of them located in Watertown, SD. (Rigdon Aff., Doc. #44, Ex. A.) Lemnis did not provide a list of witnesses, although two Lemnis employees provided affidavits in support of this motion. (Mollema Aff., Doc. #39; Philips Aff., Doc. #40.) Lemnis' two witnesses are located in the Netherlands and in San Francisco, CA. (Id.) In addition, Lemnis asserts without specific knowledge that Digital Light may have two witnesses that may be located in California. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 10.)

Since all of the witnesses hitherto asserted by the parties are employed by the parties, this court must determine the proportionality of "personal costs associated with being away from work, family, and community" that these witnesses will experience. *See* Apple, 602 F.3d at 913–14. The Eighth Circuit also finds that witnesses traveling from foreign countries into a domestic court are inconvenienced equally, regardless of the venue. Id. at 914. Our inquiry, then, is focused upon only two of the three potential defense witnesses, as the burden experienced by Mr. Mollema, based in the Netherlands, is negligible as between the two venues. At base, a California venue is more convenient for the two other defense witnesses clearly listed in the filings, Mr. Nia and Mr. Philips. On face, despite the convenience of the two defense witnesses served by a California venue, such convenience is at parity with the convenience of a South Dakota venue for the seven South Dakota-based witnesses to be called by plaintiff.

Lemnis argues, however, that plaintiff's witnesses will be less inconvenienced by a Central California court proceeding in regards to their ability to work, as a Wurth "Company" known as Louis and Company is located in Brea, CA. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 9; Yee Aff., Doc. #38, Ex. 1, p. 39.) Lemnis contends that plaintiff's witnesses can work at this location. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 9.) No evidence, however, indicates that this is indeed possible. Naturally, by Lemnis' logic, if plaintiff is a subsidiary of Wurth Germany (Mot. to Transfer, Doc. #34, p. 5), then Louis and Company, found on the same website list provided by Lemnis, is also a subsidiary. The law assumes that a subsidiary has a distinct personality before the law unless facts indicate otherwise. *See* Burnet v.

8

Clark, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities.") This presumption for the distinctiveness of operations certainly keeps this court from taking Lemnis' word that plaintiff's witnesses can work from California. Lemnis is thereby unable to upset the parity of inconveniences between the parties in both venues.

Lemnis finally contends that the seven witnesses from South Dakota for plaintiff have no personal knowledge of the Pharox dealings, and that some of them will provide duplicate testimony. (Id. at p. 9.) Lemnis thereby implies that because the witnesses will not provide material testimony, or because their witnesses are cumulative, their convenience is arbitrary. Although the Eighth Circuit has not dealt with either issue, a number of state courts give these considerations some authority. *See* H.C. Lind, Construction and effect of statutory provision for change of venue for the promotion of the convenience of witnesses and the ends of justice, 74 A.L.R. 2d 16, § 15 (1960) (Cal., Minn., N.Y.).

Assuming, *arguendo*, that these theories are meritorious, Lemnis still fails to prove the immateriality of these witnesses. In fact, all witnesses may be immaterial. It is plain from the description provided by plaintiff that one of the witnesses (Mr. Sullivan) will testify on communications that plaintiff had with the defendants during the design process. (Rigdon Aff., Doc. #44, Ex. A.) Moreover, plaintiff alleges that witnesses on such topics as damages (Mr. Kennedy, Mr. Rigdon), and causality–the representations made by defendants and plaintiff's actions taken in reliance upon them (Ms. Hoppe, Mr. Rigdon)–are also located in South Dakota. These witnesses will reportedly testify upon issues that clearly implicate both Lemnis and Digital Light in this case. Additionally, only two of the seven witnesses from South Dakota share the same description in plaintiff's witness list. (Id.) Lemnis cannot produce any tangible proof with which to impeach the credibility of these witnesses. Lemnis' arguments discrediting the materiality of the inconvenience plaintiff's witnesses will suffer in a transfer thereby lack substance.

Considering the convenience of witnesses, Lemnis is unable to show how this factor strongly falls in its favor. Lemnis has no proof that plaintiff's employee-witnesses can work with a subsidiary, thereby making them less inconvenienced by California proceedings than the defense's employee-witnesses will be during South Dakota-based proceedings. Moreover, by

utilizing the general descriptions of testimony subjects in plaintiff's witness list, it is clear that most of the witnesses may have material information that implicates both Digital Light and Lemnis in this matter.

### iii. Interest of Justice

Under this factor, a meticulous court considers issues of (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having local courts determine questions of local law. Terra II, 119 F.3d at 696.

Judicial economy is synonymous with availability and use of court resources. Although the District of South Dakota has invested some resources into this case, a transfer of venue would not constitute a waste of these resources since this court has not developed a familiarity or expertise in the issues presented. Terra Int'l, Inc. v. Miss. Chem. Corp. (*Terra I*), 922 F. Supp. 1334 (N.D. Iowa 1996), *aff'd*, 119 F.3d 688, 696 (8th Cir. 1997). With this case only in its early stages, there is little risk of lost resources. This Court also has no proof that either district materially differs in their availability of resources to handle this case. Indeed, as a judge on Senior Status, I now have more than adequate time to try this case promptly. Thus, this factor plays little role in the overall analysis.

Since it is already established that the Court must give deference to plaintiff's choice of its home forum, the next question is whether the costs of litigation for both parties will be substantially greater in one forum over another. This inquiry focuses on whether "the cost of making the necessary proof" in a certain venue will unjustly impact either party. *See* Terra I, 922 F. Supp. at 1364, *aff'd* 119 F.3d 688, 696 (8th Cir. 1997). Lemnis provides few specifics on costs, although it did argue that its lead counsel is located in Los Angeles, within the Central District, presumably making costs of litigation less because of the proximity of a litigator. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 10.) Plaintiff also provided few details on litigation costs in South Dakota, although it stated its counsel is located in South Dakota. (Pl.'s Resp. in Opp'n to Mot. to Transfer, Doc. #42, p. 8.) Lemnis additionally argues that both defendants will bear the burden of its employee-witnesses having to testify in a district without a

10

company office. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 9.) As noted above, Lemnis contends plaintiff will not similarly suffer in California, as Wurth Germany has a subsidiary office in Brea, CA, where the plaintiff's witnesses might work during California proceedings. (Id.; Yee Aff., Doc. #38, Ex. 1, p. 39.) This point is rather dubious. *See supra* pages 8–9. For argument's sake, however, if Lemnis is correct, this would place Lemnis at a legitimate cost disadvantage compared to plaintiff in litigation. Nevertheless, the question is whether these costs will interfere in their ability to make the necessary proof before this court. Terra I, 922 F. Supp. at 1364. Lemnis offers no direct proof of this fact. As an international company, it seems unlikely that the slight cost burden Lemnis experiences relative to plaintiff in these proceedings will keep them from properly trying this case. Ultimately, Lemnis cannot demonstrate how differences in cost of litigation between the venues will keep them from making "the necessary proof."

The final inquiry requires this court to resolve conflict of law issues and determine whether any advantages might be gained in the Central District of California or the District of South Dakota as to interpreting the respective state's substantive law for this proceeding. This requires a determination of which state's law applies to the substance of this controversy and whether one district is better able to interpret those state law issues in the interests of justice. Eighth Circuit courts affirm that a venue that is "at home with the state law that must govern the case" favors transfer. Apple, 602 F.3d at 915.

On the issue of which state law to apply, Lemnis avers that California law governs the contract between itself and Digital Light. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, pp. 10–11.) Lemnis first asserts that plaintiff's terms and conditions stipulating that South Dakota law governs plaintiff's contract with Digital Light do not apply to this proceeding. (Id. at 11.) Considering how inextricable the issues surrounding the plaintiff-Digital Light relationship are to the Digital Light-Lemnis relationship for purposes of this proceeding, it would be impossible at this juncture to say that South Dakota law does not apply.

To counter this, Lemnis tenders the argument that a contract between a buyer and seller is formed when the buyer's purchase orders are accepted, and that any additional terms imposed by a seller do not constitute terms of the contract unless the buyer accepts them. PCS Nitrogen

11

Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 979–80 (8th Cir. 2000). By making this argument, Lemnis contends that plaintiff's "standard terms and conditions of sale" are additional terms that Lemnis never expressly accepted, including plaintiff's choice of law provision. (Lemnis Reply Mot. to Transfer Venue, Doc. #53, p. 11.) Thus, if successful, Lemnis would prove that South Dakota law does not inform the dealings between Digital Light and plaintiff, making the need for a South Dakota venue to interpret South Dakota law superfluous.

This court must inquire further into the Eighth Circuit's opinion in PCS Nitrogen in order to determine which forum's substantive law is applicable. The key provision for determining the legitimacy of additional terms provided by the seller is U.C.C. § 2-207. *See* PCS Nitrogen, 225 F.3d at 979. Since both the California and South Dakota codified versions of U.C.C. § 2-207 are materially the same (see Cal. Com. Code § 2207 and SDCL 57A-2-207,) and these are the two jurisdictions asserted as having sway over the contract, (Pl.'s Resp. in Opp'n to Mot. to Transfer, Doc. #42, p. 10 (South Dakota); Reply in Supp. Of Mot. to Transfer, Doc. #53, pp. 10–11 (California),) there is no need to analyze which particular state's law should determine whether plaintiff's choice of law provision is enforceable. *See* PCS Nitrogen, 225 F.3d at 977 n.2.

With a contract formed between Digital Light and plaintiff under U.C.C. § 2-207(1), a fact that neither party denies, this court must apply § 2-207(2) to interpret the contract's terms. PCS Nitrogen, 225 F.3d at 980 n.3. The section provides:

> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>     (a) the offer expressly limits acceptance to the terms of the offer;
>     (b) they materially alter it; or
>     (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

U.C.C. § 2-207 (2004); Cal. Com. Code § 2207; SDCL 57A-2-207.

In looking at the purchase orders cited by Lemnis as the offer in this contract dispute, (Reply in Supp. Of Mot. to Transfer, Doc. #53, pp. 11), there is no provision expressly limiting acceptance to the limited terms provided in the purchase orders. (Nia Aff., Doc. #19, Exs. B–D.) Ultimately, neither Digital Light nor Lemnis objected to the plaintiff's terms at any point during their dealings with plaintiff. As a result, neither party tripped subpart (a) or (c) of U.C.C. § 2-207(2). Thus, for Lemnis to prevent plaintiff's choice of law provision from applying, the

provision must "materially alter" the terms of Digital Light's purchase order, tripping subpart (b). In order for a provision to "materially alter" the terms provided by the offeror, the provision must result in surprise or hardship if incorporated without express awareness by the other party. N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 726 (8th Cir. 1976) (citing U.C.C. § 2-207, cmt. 4).

There is no mention in the purchase orders of a choice of law governing the terms of this agreement, nor is there a statement of venue governing controversies arising out of the terms of the agreement. (Nia Aff., Doc. #19, Exs. B–D.) A choice of law provision is not listed in the U.C.C. commentary's examples of additional terms that would materially alter the contract, thereby making the application of § 2-207 to these terms unfair. U.C.C. § 2-207, cmt. 4. As noted in the Memorandum of Law for Digital Light's Motion to Dismiss, Digital Light availed themselves of South Dakota in their Pharox dealings with plaintiff. Thus, such a provision should not result in surprise for Digital Light, particularly when it supposedly received these clearly-denoted terms with plaintiff's invoice and chose not to provide similar terms in its purchase orders. The Second Circuit, in deciding a case with a similar provision and a similar lack of surprise, found that a choice of law provision does not materially alter the contract and should be incorporated into the offeror's contract. *See* Coastal Indus., Inc. v. Automatic Steam Prods. Corp., 654 F.2d 375, 378–79 (2d Cir. 1981). Thus, this court should construe plaintiff's "standard terms and conditions of sale," (Giba Aff., Doc. #31, Ex. #5) particularly under the subsection entitled "Governing Law," as constituting terms of the contract governing the Pharox dealings between Digital Light and plaintiff.

With this finding, South Dakota law and California law may both need to be applied to this controversy. This means that neither the District of South Dakota nor the District of Central California would have an advantage in determining questions of law.

Ultimately, in the interest of justice, there are few distinctions between the Central District of California and the District of South Dakota in the seven factors analyzed. The only factor that weighs heavily in favor of one party or another is the presumption in favor of plaintiff's choice of venue. Nothing indicates that any factor "strongly favors" Lemnis in its motion to transfer.

### C. Digital Light's Motion to Dismiss

Lemnis may make the argument that issues of South Dakota law and evidence based in South Dakota are only relevant to plaintiff's relationship with Digital Light. They may argue that transfer is permissible even if the court denies Digital Light's motion to dismiss. This outcome–allowing Digital Light to be subject to proceedings in one court and Lemnis in another–would effectively bifurcate the proceedings. This is an impermissible outcome, as 28 U.S.C. § 1404(a) only authorizes the transfer of an entire action, not individual claims. *See* In re Flight Transp. Corp. Sec. Litig., 764 F.2d 515, 516–17 (8th Cir. 1985). A court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section contemplates instead a plenary transfer or retention of an entire case. Id. Ultimately, the Court is left with three options: transfer the entire proceeding to Central California, keep it here, or transfer *sua sponte* to some other court that provides a level of convenience and justice that overcomes the presumption in favor of the plaintiff's choice of venue. *See* 28 U.S.C. § 1404(a).

This is a rather unusual case. As far as the court can determine at this stage, there is no claim that the design was defective. If there is such a claim as to the design work done in South Dakota, the issue would be even more "South Dakota oriented." This is despite the fact that denials have been made as to allegations of where the design work was done. It does appear that almost all the matters at issue will be matters of law for the court to determine. This includes issues as to the existence of a partnership, estoppel, the existence of a contract or contracts, agency questions, and similar questions. It thus appears that very few witnesses will be required in the trial of this case. The court wonders what witnesses would or could be called if the only issue is who owed what money for the work done by the plaintiff.

### III. CONCLUSION

Lemnis is unable to provide evidence that indicates any of the aforementioned factors "strongly favors" their choice of venue, whether in terms of convenience or justice. Because of this fact, Lemnis is unable to overcome the presumption this court must accord to the plaintiff's choice of venue. This presumption stands because Lemnis is unable to aver facts sufficient to depict Wurth Germany as the real party in interest. This motion to transfer venue should be denied.

## IV. ORDER

Based upon the foregoing,

IT IS ORDERED that defendants' motion, Doc. #34, to transfer venue pursuant to 28 U.S.C. § 1404(a) is denied.

Dated this 16th day of July, 2010.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Barbara Poepde*
DEPUTY
(SEAL)